**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| GARY HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:06CV470-HEH |
| ) | |
| WILLIAM L. JAMES, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION
(Granting in Part Defendants' Plea of Immunity and Motion to Dismiss)**

This civil rights action evolved from an assault by one student on another at a public high school in the City of Richmond. The matter is presently before the Court on Defendants' Plea of Immunity and Motion to Dismiss. Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Defendants' motion with respect to the federal claims and will remand the remaining common law torts as to the individual Defendants back to state court.

**I. Background**

Plaintiff Gary Hill, through his father Gary Ford, filed the underlying Motion for Judgment in this case in the Circuit Court of the City of Richmond—which Defendants removed to this Court—alleging that one of the defendants, Edward L. Hopkins, sexually assaulted him in June 2004 in a Wythe High School classroom. In addition to Hopkins, Plaintiff included as defendants the School Board of the City of Richmond, William L. James (principal of T.C.

Boushall Middle School), Gloria Graham-Johnson (special education coordinator for the School Board), and Earl Pappy (principal of Wythe High School). Plaintiff alleges negligent and intentional infliction of emotional distress in Cause I and gross negligence and willful misconduct in Cause II. Plaintiff also brings a civil rights claim in Cause IV under § 1983,[1] seeking monetary damages, predicated on his contention that Defendants deprived him of his rights under the Individuals with Disabilities Education Act ("IDEA"), § 504 of the Rehabilitation Act, and Americans with Disabilities Act ("ADA"). Plaintiff seeks compensatory and punitive damages, as well as court costs and attorneys' fees. Defendants James, Graham-Johnson, Pappy, and the School Board argue that their discretionary actions as public officials are shielded by immunity. In the alternative, they urge the Court to dismiss Plaintiff's claim for failure to state a cause of action.

Plaintiff has been mentally retarded since birth and was eligible for the Educable Mentally Retarded program in the Richmond Public Schools system. Mot. for J. ¶ 24. In June 2002, Plaintiff's parents met with his seventh grade teacher to explain the need for a revised Individual Education Plan (IEP) for Plaintiff to address his special needs. *Id.* ¶¶ 25–26. The parents maintain that the existing IEP made made him more vulnerable to predatory students. In their view, Plaintiff was being placed in classrooms where he could be exploited by "behavioral malfeasants." *Id.* ¶ 28.

Plaintiff's parents continued to seek a new IEP until December 2002, when Plaintiff alleges that he was assaulted in a T.C. Boushall classroom when the teacher "left the classroom

---

[1] Although Plaintiff denotes the civil rights claim as "Cause IV," Plaintiff's Motion for Judgment includes only three claims.

2

unsupervised for an unreasonable amount of time and without proper justification." *Id.* ¶ 30. Plaintiff asserts that the teacher and Defendant James, the principal of T.C. Boushall, attempted to conceal the incident from Plaintiff's parents and were untruthful about disciplinary action taken against the offending students. *Id.* ¶¶ 34–35. Although Plaintiff was subsequently placed in a different middle school, Plaintiff argues that Defendant James failed to institute any remedial measures, such as implementing a new IEP. *Id.* ¶ 38–40.

In January 2003, Plaintiff's parents met with Defendant Graham-Johnson, coordinator of Richmond Public Schools Special Education. *Id.* ¶ 42. According to Plaintiff, Graham-Johnson lacked knowledge of Plaintiff's situation, denied Plaintiff's parents' request to move Plaintiff to another school, and refused the parents' request to reevaluate Plaintiff's educational plan. *Id.* ¶¶ 42–43. Although no further assaults occurred during the 2002-2003 school year, Plaintiff claims "his educational opportunity suffered as did his educational performance." *Id.* ¶ 47.

In June 2003, in anticipation of Plaintiff attending Wythe High School the following school year, Plaintiff's parents met with the school's principal, Defendant Pappy. *Id.* ¶ 49. Plaintiff claims that Pappy assured them that none of the students that assaulted Plaintiff would be attending Wythe[2] and that an appropriate IEP evaluation would take place to ensure Plaintiff's "education in the least restrictive but safest alternative." *Id.* ¶¶ 49, 51. Plaintiff alleges that, one year later in June 2004, he was sexually assaulted by Defendant Hopkins, another student at Wythe. *Id.* ¶ 55. Plaintiff's pleadings imply an associative link between Defendant Pappy's representation and the assault suffered by Plaintiff. Defendant Hopkins was convicted of sexual assault for his actions and is currently serving a prison sentence. *Id.* ¶ 56. This lawsuit followed.

---

[2] Plaintiff does not contend that any of those students did in fact attend Wythe.

Defendants argue that they are immune from suit under the doctrines of sovereign, statutory, and qualified immunity. Further, Defendants argue that any claims not covered by immunity should be dismissed for failure to state a claim under Rule 12(b)(6).

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts because of their res judicata effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Martin*, 980 F.2d at 952 (internal quotations omitted). The Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Id.*

## III. Analysis

### A. Federal Claims

Turning first to Plaintiff's civil rights claim, Defendants James, Graham-Johnson, and Pappy assert a qualified immunity defense. Under the doctrine of qualified immunity, government officials performing discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). Qualified immunity is

"an *immunity from suit* rather than a mere defense to liability," and therefore, should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).

To determine whether Defendants are entitled to qualified immunity, the Court must "(1) identify the right allegedly violated, (2) consider whether at the time of the alleged violation the right was clearly established, and (3) determine whether a reasonable person in Martin's position would have known that his actions would violate that right." *Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004). In performing the first step, the Court must determine whether the facts alleged, taken in the light most favorable to the Plaintiff, show that Defendant's conduct violated a statutory or constitutional right. *See Saucier*, 533 U.S. at 201. If Plaintiff cannot surmount this hurdle, the analysis ends, and the Defendants are entitled to qualified immunity. *Id.*

Cause IV is apparently predicated on violations of the IDEA, the Rehabilitation Act of 1973, and the ADA. The Court will review each component separately. With respect to the IDEA, Plaintiff primarily argues that Defendants violated its mandate by failing to "ensure the development and implementation of a viable Individual Education Plan (IEP)." Mot. for J. ¶¶ 69, 72. Plaintiff contends that this failure was causally related to his sexual assault. *Id.* ¶ 74. For this alleged violation, Plaintiff seeks compensatory and punitive damages. *Id.* ¶¶ 74–75. The Motion for Judgment contains no request for remedial, injunctive, or declaratory relief.

"[T]he touchstone of IDEA is the actual provision of a free appropriate public education." *Sellers v. Sch. Bd.*, 141 F.3d 524, 527 (4th Cir. 1998). In *Sellers*, the Fourth Circuit made clear that "[t]ort-like damages are simply inconsistent with IDEA's statutory scheme," and thus, compensatory and punitive damages are not appropriate for IDEA violations. *Id.* at 527–28. Further, the court held that "parties may not sue under section 1983 for an IDEA violation." *Id.*

5

at 529.  Therefore, the Court will dismiss the IDEA element of the civil rights claim.

Unlike the IDEA, compensatory damages may be awarded for violations of Section 504 of the Rehabilitation Act and Title II of the ADA.  *See Barnes v. Gorman*, 536 U.S. 181, 185–87 (2002); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994); *but see Barnes*, 536 U.S. at 189 ("[Punitive damages] may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"In general, a plaintiff seeking recovery for violation of either statute must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005).  Further, "[a] plaintiff seeking relief under Title II of the ADA must prove that disability 'played a motivating role' in the adverse action, while a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of plaintiff's disability." *Id.* at 498 n.17 (quoting *Baird v. Rose*, 192 F.3d 462, 469–70 (4th Cir.

1999)). "To prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Sellers v. Sch. Bd.*, 141 F.3d 524, 529 (4th Cir. 1998) (alteration in original) (internal quotations omitted). To state an actionable claim, Plaintiff must plead "bad faith or gross misjudgment." *Id.*

The Court finds that Plaintiff has sufficiently alleged that he had a disability—mental retardation—and was otherwise qualified to receive the benefits of a public high school education. Whether the Plaintiff has sufficiently alleged discrimination caused by his disability, however, requires a closer look. As pled, Plaintiff essentially asserts that Defendants violated his civil rights by depriving him of a free and appropriate education. *See* Mot. for J. ¶ 120. According to Plaintiff, this deprivation was a consequence of Defendants' refusal to revise his IEP, which put him in an unsafe classroom and led to the June 2004 assault. The Court finds that Plaintiff's allegations do not give rise to liability under the Rehabilitation Act or the ADA.

In *Sellers*, the Fourth Circuit noted that "[t]he reference in the Rehabilitation Act to 'discrimination' must require . . . something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." *Sellers*, 141 F.3d at 529 (internal quotations omitted). "That a court may . . . come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [IDEA], is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap." *Id.* (alteration in original) (internal quotations omitted). Thus, the proper question before the Court with respect to the Rehabilitation Act and the ADA is not whether the Plaintiff had a viable IEP under the IDEA, but whether Defendants discriminated against Plaintiff because of his disability.

7

Plaintiff alleges no facts that suggest such discrimination took place. Plaintiff argues the June 2004 assault and the resulting injuries deprived him of his free and appropriate education. Beyond the general allegation of a faulty IEP, however, Plaintiff alleges no facts that directly or indirectly associates any of the Defendants, except of course Defendant Hopkins, with that assault. Even if Plaintiff could show that his IEP was flawed and that it led to the assault, no facts suggest—nor does Plaintiff allege—that Plaintiff's disability played a motivating role in, or was the sole cause for, Defendant's alleged refusal to revise the IEP.

Because the alleged facts taken in the light most favorable to Plaintiff do not show that Defendants violated a statutory right under the IDEA, the Rehabilitation Act, or the ADA, the Court finds that the Defendants James, Graham-Johnson, and Pappy are entitled to qualified immunity. While a qualified immunity inquiry is distinct from a Rule 12(b)(6) review, *see DiMeglio v. Haines*, 45 F.3d 790, 798 (4th Cir. 1995), the Court also finds that Plaintiff has failed to state a claim under § 1983 against Defendant School Board because, for the same reasons given above, it appears Plaintiff can prove no facts to support his § 1983 claim that would entitle him to relief. Accordingly, Cause IV will be dismissed.

**B. State Law Claims**

Generally, in the absence of a statute waiving its immunity, a school board is immune from liability arising out of negligence and intentional tort claims. *See Linhart v. Lawson*, 540 S.E.2d 875 (2001); *Crabbe v. County Sch. Bd.*, 209 Va. 356, 358, 164 S.E.2d 639, 639 (1968). Plaintiff cites no statute that waives the School Board's immunity in this case, nor does it appear that such a statute exists. Because the School Board's immunity is clear as to the state law claims in Causes I and II, the Court will grant the School Board's Plea of Immunity and its

8

Motion to Dismiss for those claims.

The law is less clear as to the other defendants. While it appears to the Court that Defendants James, Graham-Johnson, and Pappy, may have immunity as to at least some of the state law claims, the Court will leave that decision to the state court. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over the remaining state law claims—Causes I and II, comprising negligent and intentional infliction of emotional distress, gross negligence, and willful misconduct—against Defendants James, Graham-Johnson, and Pappy. Those claims will be remanded to the state court.

### IV. Conclusion

For the reasons stated above, Defendant School Board's Plea of Immunity and Motion to Dismiss will be granted as to Causes I, II, and IV. Defendants James, Graham-Johnson, and Pappy's Plea of Immunity and Motion to Dismiss will be granted as to Cause IV. Causes I and II against the individual Defendants will be remanded to the state court.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this __27th__ day of __September 2006__.
Richmond, VA